IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| JAMES D. JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:14-cv-01217-RDP-JHE |
| ) | |
| DR. SKOOG, et al., ) | |
| ) | |
| Defendants. ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff James D. Johnson has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, alleging that rights, privileges, or immunities afforded him under the Constitution or laws of the United States have been abridged by Defendants Dr. Charles Vernon Skoog, Nurse Katherine Lovett (LPN), and Nurse Linda Miller (RN). (Doc. 14). Plaintiff seeks compensatory damages for alleged denial of adequate medical care. (*Id.*). In accordance with the usual practices of this Court and 28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

The Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, § 804, 110 Stat. 1321, and 28 U.S.C. § 1915A require this Court to screen complaints filed by prisoners against officers or employees of governmental entities and to dismiss the complaint or any portion of the complaint that it finds frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. Thus, under § 1915A, the court may *sua sponte* dismiss a prisoner's complaint prior to service. Nevertheless, in order to protect a *pro se* prisoner's right of access to the courts, these complaints are read by less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*,

404 U.S. 519, 520-21 (1972); *Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir. 1984); *Watson v. Ault*, 525 F.2d 886, 891 (5th Cir. 1976).

## I. Procedural History

The initial complaint filed June 25, 2014, was twenty-seven pages in length and set out in narrative form. (Doc. 1). The complaint also asserted multiple unrelated claims in violation of Rules 18(a) and 20(a) of the Federal Rules of Civil Procedure. In addition, Johnson submitted fifty-two pages of narrative notes on June 27, 2014 and July 2, 2014. (Docs. 5 & 6). Accordingly, on August 6, 2014, the court ordered Johnson to re-plead his complaint in compliance with the Federal Rules of Civil Procedure so the court could accurately determine the claims he was asserting. (Doc. 13). The order warned Johnson that his re-pleaded complaint should not refer back to the initial complaint or supplemental documents, and that the court would consider only those claims properly set forth in the re-pleaded complaint. (*Id.* at 2). Johnson submitted his re-pleaded complaint on August 27, 2014. (Doc. 14). This report is therefore directed at the allegations asserted in the re-pleaded complaint.

## II. Plaintiff's Allegations

Johnson is a former inmate of the Shelby County Jail in Columbiana, Alabama.[1] (Doc. 14). Before entering the Shelby County Jail, the Veterans Administration ("VA") Hospital in Birmingham, Alabama, had prescribed him certain antibiotics and pain medication to address his "urinary detention, [and] bladder and kidney infection." (*Id.* at 5-6).

Johnson alleges that, after he entered Shelby County Jail, Nurse Katherin Lovett administered blood-pressure medication to him that had not been prescribed by a physician.

---

[1] At present, he is incarcerated in the Limestone Correctional Facility in Harvest, Alabama. (Doc. 14 at 2).

(Doc. 14 at 3).[2] He contends Nurse Lovett dispensed these medications during the period from July 30, 2008, to June 10, 2013, which resulted in uncontrollable high blood pressure. (*Id*. at 5). He also contends Nurse Lovett refused to provide him with medications he had been prescribed for his urinary detention and infections. (*Id.* at 5-6).

The claims against Nurse Linda Miller are directed primarily at her failure to properly remove a catheter from Johnson on two separate occasions, each time allegedly without a doctor's consent. The first occasion was on August 14, 2008, when she "rudely" removed an inflated catheter without first deflating it. (Doc. 14 at 7). Johnson contends the catheter was "snatched" out, leaving a piece of the catheter inside his penis until it "came out shortly after the removal of the second catheter." (*Id.* at 8-9). Johnson was again catheterized on December 30, 2009, but it was removed seven days later by Nurse Miller "in the same manner as she removed the first." (*Id.* at 8). It was at this time that a piece of the first catheter allegedly was recovered. (*Id*. at 9). He also complains that Nurse Miller failed to provide him with "adequate, proper porsions [sic] of antibiotics, for his urinary retention, bladder, and kidney infection." (*Id*. at 8).

Lastly, the complaint alleges that, in August of 2008, Dr. Charles Skoog explicitly told Johnson he would not receive the medications the VA Hospital had prescribed. (Doc. 14 at 10). Johnson also complains Dr. Skoog increased his blood pressure medication in February of 2010 "without even checking [Johnson's] medical history." (*Id.*). Although Dr. Skoog scheduled a CAT scan for Johnson in February 2010, he complains Dr. Skoog never saw him again during the remainder of his incarceration in the Shelby County Jail, despite having "serious medical needs" during that time. (*Id.* at 10-11).

---

[2] Johnson later identifies these medications as Clonidine; Lisinapril; Varapamil; Spiriva; Capuis; and Doxazosin. (Doc. 14 at 5).

Johnson states he continues to suffer bladder, kidney, and urinary tract infections. (*Id.* at 9 and 11). He now seeks compensatory damages for alleged deliberate indifference to serious medical needs.

### III. Analysis

The majority of Johnson's claims are due to be dismissed, either because they are based on facts occurring outside the applicable statute of limitations or because they are contradicted by other facts in his complaint and therefore clearly baseless.

**A. Statute of Limitations**

Several of Johnson's claims are barred by the statute of limitations applicable to § 1983 claims brought in Alabama. Because there is no federal statute of limitations for actions brought under 42 U.S.C. § 1983, federal courts must apply the appropriate state statute of limitations. In *Wilson v. Garcia*, 471 U.S. 261 (1985), the United States Supreme Court instructed that the state statute of limitations for personal injury actions should be used for claims brought under § 1983. In *Owens v. Okure*, 488 U.S. 235 (1989), it clarified the rule for situations where a state has "one or more statutes of limitations for certain enumerated intentional torts, and a residual statute for all other personal injury actions" by stating that the general or residual statute of limitations governing personal injury action is the proper statute of limitations to be applied to § 1983 actions. *Id.* at 236. The general or residual statute of limitations in Alabama is two years. *See* Ala. Code § 6-2-38(l); *Holt v. Valls*, 395 Fed. App'x. 604, 606 (11th Cir. 2010). In this instance, Johnson complains of several events occurring more than two years prior to the June 15, 2014 filing date of the complaint.[3]

---

[3] Under the mailbox rule, applied to prisoner filings, a document is deemed filed the date it is delivered to prison officials for mailing, and, "[a]bsent evidence to the contrary in the form of prison logs or other records, [the court] will assume that [petitioner]'s motion was delivered to

4

Neither of the alleged incidents involving Nurse Miller occurred within two years of the filing date. (Doc. 14 at 8-9) (stating the second alleged catheter removal occurred on January 6, 2010, over four years before the filing date). Similarly, neither Dr. Skoog's 2008 refusal to continue prescription of the medications the VA had prescribed nor the 2010 change in blood pressure medication, allegedly without reviewing Johnson's records, occurred within the limitations period. (*Id.* at 10).

The only claims falling within the statute of limitations period are Johnson's assertions that Nurse Lovett continued to give him un-prescribed medication up to June 10, 2013, (*id.* at 5), that Dr. Skoog only saw him twice in the almost five years he was at the Shelby County Jail despite Johnson having serious medical needs, (*id.* at 11), and that all three defendants refused to provide him medication for his urinary tract issues, (*id.* at 5-6, 8, & 11). All other claims are due to be **DISMISSED**.

B.  **Sufficiency of Allegations**

Johnson's remaining claims against the nurse defendants are also due to be dismissed because the general facts upon which they are based are contradicted by more specific facts in other areas of his complaint, making it clear they did not occur or do not create liability. Only the claims against Dr. Skoog are sufficiently pled to require a response from the defendant.

First, the contradictory nature of Johnson's allegations with regard to the administration of blood-pressure medication presents grounds to dismiss that claim against Nurse Lovett. A court's review of a prisoner's complaint under the PLRA "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual

---

prison authorities the day he signed it." *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001). Johnson's original complaint was executed on June 15, 2014. (Doc. 1 at 4).

contentions are clearly baseless." *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001) (quoting *Neitzke v. Williams*, 490 U.S. 319 (1989)).  Although courts are generally required to accept as true the factual allegations in a complaint for purposes of a motion to dismiss, courts need not accept as true "internally inconsistent factual claims." *Howard v. Kerzner Intern. Ltd.*, 2014 WL 714787, at *5 (S.D. Fla. Feb. 24, 2014); *accord Battle v. Central State Hospital*, 898 F.2d 126, 130 n.3 (11th Cir. 1990) ("[A]llegations that are contradicted by other allegations in the complaint may also constitute grounds for dismissal.").

 Johnson's contention that Nurse Lovett administered blood-pressure medication without a prescription, (doc. 14 at 3), is directly contradicted by his reference to a February 3, 2010, meeting with Dr. Skoog in which Dr. Skoog *increased* Johnson's blood-pressure medication after observing a blood-pressure reading of 140/100, (*id*. at 10).  Johnson had, at least, been prescribed blood-pressure medication as of February 3, 2010, so, even if un-prescribed blood-pressure medication had been administered before that time, it would have occurred outside of the statute of limitations.

 Second, the complaint also fails to assert a valid claim of deliberate indifference on the part of the nurse defendants.  Medical treatment of prisoners violates the Eighth Amendment only when it is so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness.  *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).  The conduct of prison officials must run counter to evolving standards of decency or involve the unnecessary and wanton infliction of pain to be actionable under § 1983.  *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976).  Therefore, negligent diagnosis or treatment of a medical condition does not constitute a wrong under the Eighth Amendment. *Estelle*, 429 U.S. at 106; *McElligot v.*

*Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999).  Likewise, a mere difference of opinion between an inmate and the prison medical staff as to treatment or diagnosis will not, alone, give rise to a cause of action under the Eighth Amendment.  *Harris*, 941 F.2d at 1505.  "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

In this instance, Johnson has alleged the nurse defendants refused to give him the antibiotics and pain medication the VA Hospital prescribed for his urinary detention and bladder and kidney infections, (doc. 14 at 5-6 & 8); however, at the same time, he alleges Dr. Skoog explicitly told him in August 2008, he would not be receiving those medications, (*id.* at 10).  "A nurse is not deliberately indifferent when she reasonably follows a doctor's orders . . . ."  *Bauer v. Kramer*, 424 F. App'x 917, 919 (11th Cir. 2011).  Neither Nurse Lovett nor Nurse Miller can be faulted for refusing to provide medicine, which, Johnson admits, the doctor had already refused to prescribe him.  The remaining claims against the nurse defendants are due to be **DISMISSED**.

However, the deliberate-indifference claims against Dr. Skoog are sufficiently pled to require a response from the defendant.  Johnson alleges that, despite Johnson having had urinary detention and urinary tract infections the entire time he was in the Shelby County Jail, Dr. Skoog refused to prescribe him the medications he had previously been receiving from the VA Hospital and only saw him on two occasions in nearly five years.  (Doc. 14 at 10-11).  Johnson alleges that, the first time he saw Dr. Skoog, Dr. Skoog told him he could not have his previously prescribed medications and, the second time he saw him, Dr. Skoog increased Johnson's blood-

pressure medication and ordered a CAT scan.  (*Id.*).  Johnson alleges he still suffers from the urinary tract issues.  (*Id.* at 11).

## IV. RECOMMENDATION

Accordingly, the undersigned **RECOMMENDS**

1. All of the claims against Nurses Lovett and Miller be **DISMISSED WITHOUT PREJUDICE**, pursuant to 28 U.S.C. § 1915A(b)(1), for failing to state a claim upon which relief can be granted, and

2. The deliberate-indifference claim against Dr. Skoog be referred back to the undersigned for further proceedings.

## V. NOTICE OF RIGHT TO OBJECT

The plaintiff may file specific written objections to this report and recommendation within fourteen (14) days from the date it is filed in the office of the clerk.  **Any objections to the failure of the magistrate judge to address any contention raised in the petition also must be included.**  Failure to do so will bar any later challenge or review of the factual findings of the magistrate judge, except for plain error.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, (1985), *reh'g denied*, 474 U.S. 1111 (1986); *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013).

To challenge the findings of the magistrate judge, the plaintiff must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection  Any objections to the failure of the magistrate judge to address any contention raised in the complaint also must be included.  Objections not meeting the specificity requirement set out

above will not be considered by a district judge. The filing of objections is not a proper vehicle to make new allegations or present additional evidence. Furthermore, it is not necessary for the plaintiff to repeat legal arguments in objections.

The plaintiff may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a district judge.

The Clerk is **DIRECTED** to serve a copy of this report and recommendation upon the plaintiff.

DONE this 23rd day of October 2015.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE